**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ANIDA OVERSHOWN-NUNEZ,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 4:24-cv-02455** |
| | § | |
| **CITY OF HOUSTON, TEXAS, a** | § | |
| **government entity, and HOUSTON** | § | **JURY TRIAL DEMANDED** |
| **POLICE DEPARTMENT, a** | § | |
| **government entity,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This action is arising under the Fair Labor Standards Act of 1938 ("FSLA"), brought as an individual action to recover damages and attorneys' fees owed to Plaintiff, owed by Defendant CITY OF HOUSTON, TEXAS, a government entity, and its subsidiary, HOUSTON POLICE DEPARTMENT, and for good cause alleges as follows:

## I.

## PARTIES

1.      Plaintiff, ANIDA OVERSHOWN-NUNEZ an individual and resident of Harris County, Texas.

2.      Defendant CITY OF HOUSTON, TEXAS, is a government entity with its principal place of business in Harris County, Texas and may be served through its registered agent City of Houston Secretary, Pat J. Daniel, or a person she so designates to accept service, at 900 Bagby Street, Room P101, Houston, Texas 77002.

3.      Defendant HOUSTON POLICE DEPARTMENT is government entity located at 1200 Travis Street, Houston Texas, 77002 and may be served through its registered agent City of

1

Houston Secretary, Pat J. Daniel or a person she so designates to accept service, at 900 Bagby Street, Room P101, Houston, Texas 77002.

## II.

## JURISDICTION AND VENUE

4.      The Court has original subject matter jurisdiction because this case raises a federal question under FSLA.

5.      Venue is proper under 28 U.S.C § 1391 (b), as the cause of action arose in this judicial district, and the events underlying this complaint arose in this judicial district as well.

## III.

## FACTUAL BACKGROUND

6.      Plaintiff was employed with Defendants' Fleet Management Division for nearly 30 years.

7.      Plaintiff's most recent position with Defendants was as an Administrative Manager. She had planned to retire after 30 full years of service in April of 2024.

8.      However, on November 1, 2023, Plaintiff was abruptly forced to resign from her position prior to her planned retirement date.

9.      During her tenure, Plaintiff tediously built her depleted and struggling division from 19 employees to 9 full-time employees upon her departure.

10.      Despite being categorized as "Fleet Manager" in title, Plaintiff performed management level tasks as well as non-exempt and remedial tasks during her employment. Because Plaintiff's division was typically short staffed and under constant looming budget constraints, Plaintiff wore many hats. Plaintiff did everything from washing the fleet vehicles,

driving the vehicles, ordering parts, coordinating logistics and schedules, to training and supervising.

11.     Plaintiff typically worked from 4:30 a.m. to 8:30 p.m. each workday for the past 8 years.

12.     Plaintiff was paid salary because she was classified as a "manager", despite working 16-hour days for 8 solid years. All other employees in her division were paid overtime – including Ms. Garcia and Mr. Youngblood.

13.     In 2022, Plaintiff was finally informed by a colleague that she could fill out a form to finally have overtime paid out, and she did so. The Payroll Department issued Plaintiff a check for $5,000 for some overtime pay, reflecting a small portion of the overtime premium that Defendants had failed to pay to Plaintiff. aproximately _____ hours.

14.     When Plaintiff inquired about the calculation of the overtime pay, Plaintiff was told by an agent or employee of the Defendants' Payroll Department that they "give up" because Defendants "could not make sense" of all of Plaintiff's overtime hours worked and pay.

15.     In fall of 2017, at the onset of Hurricane Harvey, Plaintiff worked and stayed at the station for over a week. Plaintiff was the only employee of Defendant who was not paid overtime, despite living and working in the office and wearing the same clothes for a week.

16.     Defendants had such little regard for Plaintiff, they allowed her to remain at the station during the disaster until she was stranded in a van, performing her job duties. A high-water rescue crew had to retrieve Plaintiff from the roof during her performing duties.

17.     Plaintiff became aware that Defendants were engaging in what she believed to be unlawful business dealings for selling, trading and profiting on vehicle parts. Plaintiff began to regularly voice her concerns at meetings.

18.     Defendants took zero remedial or proactive measures regarding Plaintiff's concerns about Defendants' potentially unlawful business activities.

19.     On or around May 8, 2023, Plaintiff learned that her subordinate employee, Ms. Stephanie Garcia, a married woman in her 50's, apparently died in her home the previous weekend. The cause of death was unknown. Plaintiff did not know the personal details of Ms. Garcia's health issues or family life, but Plaintiff was somehow blamed and shamed for Ms. Garcia's unfortunate and sudden passing.

20.     It came to Plaintiff's attention later on that Ms. Garcia had apparently had a disagreement with a co-worker, Ms. Rachel Olivera and Ms. Karisma Pierson, the Friday prior. Plaintiff was off duty on alternating Fridays, so did not witness any altercation. Plaintiff unequivocally instructed her subordinates to reach out to her when she was off duty if ever needed.

21.     Upon returning to work the following Monday, May 08, 2023, Plaintiff was mysteriously blamed for Ms. Garcia's death due to "stress at work."

22.     The allegations were patently false, as Plaintiff did not mistreat Ms. Garcia whatsoever- quite the opposite. Plaintiff encouraged, trained and promoted Ms. Garcia twice, up to Paygrade 17.

23.     The horrific gossip permeated the workplace, causing Plaintiff immense mental anguish, distress, feelings of betrayal and confusion.

24.     As a result, Plaintiff was forced to seek medical treatment.

25.    To compound the injury, on May 9, 2023, Defendants' Sgt. Troy Finner systematically organized each and every subordinate of Plaintiff to meet in his office. Sgt. Troy Finner excluded Plaintiff's involvement in these discrete meetings.

26.    Mere hours later, Plaintiff received a "Relieved of Duty With Pay" notice, seemingly at the behest of Sgt. Finner.

27.    It should be noted that prior to May of 2023, Plaintiff had a spotless record of almost 3 decades.

28.    Immediately after, Plaintiff's supervisors scurried to conduct a division meeting to solicit and collect (oral then written) statements or complaints about Plaintiff's management and job performance.

29.    Seemingly overnight, Plaintiff was slammed with a slew of written subordinate complaints. These "complaints" varied from outright lies, to half-baked allegations with nuggets of twisted factual allegations, to personal opinions and perceived slights.

30.    In these written "complaints", Defendants used Plaintiff's subordinate's critiques of her supervisory abilities against her, punishing Plaintiff for performing her job duties-reprimanding those very subordinates for sleeping on the job, arriving to work late and engaging in misconduct.

31.    In September 2023, Plaintiff received an indefinite suspension from her employment with Defendants.

32.    Defendants obstructed Plaintiff's ability to contest, appeal or dispute her suspension. Defendants did not extend Plaintiff the basic alternatives for negotiating her departure.

33.    As follows, Defendants forced Plaintiff to exercise her remaining leave and vacation time before formally retiring on November 1, 2023, against her wishes.

**IV.**

**CAUSES OF ACTION**

***Count 1:  Violation of FSLA- Failure to Pay Overtime Wages Owed***

34.    Plaintiff repeats and realleges each and every allegation of paragraphs above, as set forth fully herein.

35.     Defendants violated FSLA by failing to properly compensate the Plaintiff for work performed in the employment by Defendants.

36.    Plaintiff performed non-exempt tasks on a daily basis, including washing and driving vehicles in Defendants' Fleet Division.

37.    Defendants knowingly and intentionally failed to compensate Plaintiff overtime wages.

38.    Defendants admitted Plaintiff earned and was owed overtime and issued a partial overtime payment, but "couldn't figure it out."

39.    Plaintiff suffered damages as a result of this violation.

40.    Defendants are liable to Plaintiff for all unpaid overtime compensation and liquidated damages, attorneys' fees and costs under FSLA for work performed during time worked in excess of 40 hours per work week for the length of her employment.

Defendants are liable to Plaintiff not only for unpaid wages but for an additional and equal amount of liquidated damages.

### *Count 2: Whistleblower Retaliation*

41.    Plaintiff repeats and realleges each and every allegation of paragraphs above, as set forth fully herein.

42.    Plaintiff engaged in a protected workplace activity in that she complained of Defendants, its agents, employees or assigns engaging in illegal activity or activity that one would reasonably believe to be illegal in selling vehicles, vehicle parts belonging to Defendants, government entities, and misappropriating such profits for personal gain.

43.    Plaintiff experienced adverse employment action in that she was denied overtime compensation, forcibly placed on unpaid leave then forced to prematurely retire on November 1, 2023.

44.    A causal connection exists between Plaintiff's protected activity and her adverse employment action because the same individual she complained to of the illegal activity, Sgt. Finner, was the same individual who orchestrated Plaintiff's forced leave on the heels of her articulated complaints.

45.    Therefore, Defendants are liable to Plaintiff for damages within the jurisdictional limits of this Court.

## VI.
## JURY TRIAL DEMAND

46.    Plaintiff requests a jury trial on all questions of fact raised in this Complaint.

## VII.

## PRAYER

WHEREFORE, Plaintiff ANIDA OVERSHOWN-NUNEZ respectfully asks that the Defendants CITY OF HOUSTON, TEXAS and HOUSTON POLICE DEPARTMENT, be cited to appear and answer, and that on final trial, Plaintiff be awarded a judgment against Defendants, jointly and severally, for the following:

    a.   Judgment against Defendants for an amount equal to Plaintiff's overtime wages and unpaid wages, at applicable rates;

    b.   An equal amount in liquidated damages;

    c.   Judgments against Defendants that their violations of FSLA were willful;

    d.   To the extent liquidated damages are not awarded, an award of prejudgment interest;

    e.   Actual and consequential damages

    f.   Compensatory and non-compensatory damages;

    g.   Front and back pay;

    h.   Punitive damages;

    i.   Attorneys' fees and costs;

    j.   Pre-judgment and post-judgment interest allowed by law;

    k.   Past and future non-pecuniary damages, including emotional pain, suffering, mental anguish, damage to reputation and other non-pecuniary damages as a result of Defendant's unlawful employment practices described above, in amounts to be proven at trial;

    l.   Costs of court;

m.  Such other further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**ROGER G. JAIN & ASSOCIATES, P.C.**

_____

Blair C. Maslowski
S.D. Tex. Bar No.: 3669071
TBN: 24123268
9301 Southwest Freeway, Suite 250
Houston, Texas 77074
Tel.: (713) 981-0600
Fax: (888) 200-6848
info@rogergjain.com
**ATTORNEY FOR PLAINTIFF
ANIDA OVERSHOWN-NUNEZ**